# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mark S. E.,                                          Case No. 20-CV-1954 (JFD)

          Plaintiff,

v.                                                                    **ORDER**

Kilolo Kijakazi,

          Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mark E. seeks judicial review of a final decision by the Commissioner of Social Security denying his application for disability insurance benefits ("DIB"). The matter is now before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 22) and Defendant's Motion for Summary Judgment (Dkt. No. 31). For the reasons set forth below, the Court grants in part and denies in part each motion, reverses the decision of the Commissioner of Social Security, and remands the matter to the Social Security Administration for further proceedings.

## I.      Background

Plaintiff applied for DIB benefits on April 10, 2018, asserting that he became disabled on June 1, 2017. (Soc. Sec. Admin. R. (hereinafter "R.") 158.)[1] Plaintiff's allegedly disabling conditions were post-traumatic stress disorder ("PTSD"), general

---

[1] The Social Security administrative record is filed at Dkt. Nos. 21 through 21-14. The record is consecutively paginated, and the Court cites to that pagination rather than docket number and page.

anxiety disorder, depression, and cervical arthritis. (R. 209.) Plaintiff was employed as a natural gas leak detector for a gas company until June 1, 2017. (R. 210.) His employment ended after a traumatic, road-rage experience that occurred when he was driving his work vehicle, and another driver threatened his life. (R. 216.) Since then, he has experienced nightmares, panic attacks, and high anxiety. (R. 216.)

After Plaintiff's DIB application was denied on initial review and reconsideration, an Administrative Law Judge ("ALJ") held a hearing on October 25, 2019. (R. 31.) Plaintiff testified that he had not worked since June 2017 because he could not handle stress or be around others due to high anxiety. (R. 39.) Plaintiff attempted suicide in April 2018 because he felt he was not providing for his family and was worried he might lose his home. (R. 42.) In the year and a half between April 2018 and the administrative hearing, Plaintiff testified, he was doing "okay" but had some setbacks and occasionally felt "maybe suicidal again." (R. 43.) Sitting quietly, attending group and individual therapy, having a supportive wife, reading, and using other calming techniques have helped. (R. 43–44.) Plaintiff testified he has difficulty driving at night, concentrating, and remembering. (R. 52–53.)

The ALJ issued a written decision on November 14, 2019, determining that Plaintiff was not disabled. (R. 7.) Pursuant to the five-step sequential analysis outlined in 20 C.F.R. § 404.1520(a), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the date of the alleged onset date. (R. 12.) At the second step, the ALJ found that Plaintiff had severe impairments of depression, anxiety, and PTSD. (R. 13.) At step three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met

or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 14.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC")[2] as

> a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing simple, routine tasks in a work environment free of fast-paced production requirements involving only simple, work-related decisions and routine workplace changes. The claimant can also tolerate only occasional interaction with supervisors and coworkers, and no more than incidental contact with the public. Additionally, the claimant cannot perform driving in the course of his employment, and he cannot work around loud noises.

(R. 16.) With this RFC, the ALJ determined, Plaintiff could not perform his past employment. (R. 23.) Thus, the ALJ proceeded to step five and determined that Plaintiff could make a successful adjustment to other work as a cleaner, industrial washing machine operator, or laundry worker. (R. 24.) Consequently, Plaintiff was found not to be disabled. (R. 24.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

In this action, Plaintiff seeks reversal of the Commissioner's final decision and remand for further administrative proceedings. He raises four arguments: (1) the ALJ failed to explain why she did not include in the RFC a limitation found by psychological

---

[2] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

3

consultants; (2) the ALJ did not adequately explain why she found unpersuasive an opinion from Dr. Rochelle Gredvig; (3) the ALJ did not fully and fairly develop the record; and (4) the ALJ did not give good reasons for finding that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not consistent with the objective medical evidence or his daily activities. (Pl.'s Mem. Supp. Mot. Summ. J. at 2, Dkt. No. 23.) The Commissioner opposes Plaintiff's motion.

## II.   Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III.  Discussion

### A.    The Psychological Consultants' Opinions

In May 2018, psychological consultant Erika Gilyot-Montgomery, Psy.D., completed a mental RFC assessment as part of the initial review of Plaintiff's DIB application. (R. 68–73.) Upon review of Plaintiff's medical records, Dr. Gilyot-Montgomery determined that Plaintiff was moderately limited in the following work-related abilities:

- carrying out detailed instructions,
- maintaining concentration and attention for extended periods of time,
- working in coordination with or near others without being distracted,
- completing a normal workday and workweek without interruptions from psychological symptoms,
- performing at a consistent pace without an unreasonable number and length of rest periods,
- interacting appropriately with the general public,
- accepting instructions and responding appropriately to criticism from supervisors,
- responding appropriately to changes in the work setting, and
- setting realistic goals or making plans independently of others.

(R. 71–73.) Plaintiff was not significantly limited in all other abilities.

With respect to the sustained concentration and persistence limitations, Dr. Gilyot-Montgomery explained that Plaintiff "is capable of sustaining simple, 1–2 step tasks [with] occasional difficulty sustaining concentration, persistence and pace. [Plaintiff] would do best [with] brief and superficial interaction [with] others in a work setting[,] and fast pace tasks [are] likely to increase [psychological symptoms]." (R. 72.) With respect to the social interaction limitations, Dr. Gilyot-Montgomery explained that Plaintiff "would do best [with] brief and superficial interaction [with] general public and others in a work setting." (R. 72.) With respect to adaptation limitations, Dr. Gilyot-Montgomery explained that Plaintiff "would do best [with] occasional change, clear expectations and routine tasks" and noted that Plaintiff was managing psychological symptoms with medications and therapy. (R. 73.) At the reconsideration stage, psychological consultant Russell Ludeke, Ph.D., agreed with Dr. Gilyot-Montgomery's opinion.

The ALJ found the opinions of Dr. Gilyot-Montgomery and Dr. Ludeke persuasive. (R. 21.) The ALJ explicitly recited the limitation that Plaintiff could sustain simple, one-to-two step tasks in a work setting, with brief and superficial interaction with others and no fast-paced tasks. (R. 21.) The ALJ found the opinion consistent with the medical evidence and the record as a whole, including treatment history, mental examinations, medications, and activities of daily living. (R. 21.)

Plaintiff argues that the ALJ erred in assessing his RFC because the RFC does not specifically include a one-to-two step task limitation, but only limits Plaintiff to "simple,

6

routine tasks in a work environment free of fast-paced production requirements involving only simple, work-related decisions and routine workplace changes." (Pl.'s Mem. at 19.)

Title 20 C.F.R. § 404.1520c sets forth the current standards for an ALJ to review medical opinion evidence and prior administrative medical findings.[3] The regulation became effective on March 27, 2017 for claims filed on or after that date, taking the place of previous regulations set forth in 20 C.F.R. § 404.1527. Before the new regulation, opinions from medical sources with a longstanding treatment relationship could be deemed "controlling" evidence. *See* 20 C.F.R. § 404.1527(c)(2). In addition, medical opinion evidence was "weighed" and given more or less "weight" depending on several factors. *Id.* § 404.1527(c).

For claims filed on or after March 27, 2017, such as Plaintiff's, medical opinion evidence and prior administrative medical findings are no longer weighed or given a specific evidentiary weight. 20 C.F.R. § 404.1520c(a). Rather, medical opinions and prior administrative medical findings are evaluated for their "persuasiveness" according to five factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 404.1520c(c)(1)–(5). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Medical opinion evidence and prior administrative medical findings are treated equally under § 404.1520c.

---

[3] A prior administrative medical finding is a finding about a medical issue made by a medical consultant or psychological consultant at a prior administrative level. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

Under the previous regulation, § 404.1527, when an ALJ found a medical professional "credible" or their opinion entitled to "significant weight," the RFC had to reflect the limitations described in the opinion. *Gann v. Berryhill*, 864 F.3d 947, 952–53 (8th Cir. 2017). In *Gann*, two doctors opined that the plaintiff's ability to adapt to a work environment was limited in several ways. *Id.* at 952. The ALJ found the doctors "credible" and gave "significant weight" to their opinions, but the RFC did not include specific adaptive limitations that were described in the opinions. *Id.* Because the RFC did not contain all the impairments supported by substantial evidence in the record, the Eighth Circuit held that the resulting testimony of the vocational expert could not be considered substantial evidence. *Id.* at 953.

In *Dowden v. Saul*, a district court in Iowa addressed the same issue presented here: whether an ALJ erred by not including a one-to-two step task limitation articulated by two psychological consultants, despite deeming the prior administrative medical finding persuasive and supported by the record. No. 19-CV-2054-KEM, 2020 WL 6470180, at *7 (N.D. Iowa Nov. 3, 2020). As here, the ALJ referenced the limitation in the decision, "but without explanation," omitted it from the RFC. *Id.* The court likened the now-defunct assignment of "great" or "significant" weight previously given to medical opinions and prior administrative medical findings, *see* 20 C.F.R. § 404.1527, to the current "persuasive" designation, *see* 20 C.F.R. § 404.1520c. *Dowden*, 2020 WL 6470180, at *7. The court reasoned that the purpose of the new "regulation would be undermined if the ALJ could state a medical opinion was persuasive, well-supported, and consistent with the record, without adopting the limitations contained in that opinion or otherwise addressing

them." *Id.* Because the ALJ did not explain why the one-to-two step limitation was omitted from the RFC in *Dowden*, it was "unclear whether the ALJ believed his RFC determination captured this limitation, or whether the ALJ found this limitation unsupported or inconsistent with the record." *Id.*

At least one other court has extended *Gann* to limitations contained in opinions that are found persuasive under 20 C.F.R. § 404.1520c. *Batson v. Kijakazi*, No. 20-03251-CV-S-WBG, 2022 WL 501405, at *4 (W.D. Mo. Feb. 18, 2022) ("When an ALJ finds a medical opinion is persuasive, supported by objective evidence, and consistent with the record, any limitations in the medical opinion should be included in the ALJ's RFC.").

Here, the ALJ explicitly restated Dr. Gilyot-Montgomery and Dr. Ludeke's one-to-two step task limitation in the decision. The ALJ found Dr. Gilyot-Montgomery and Dr. Ludeke's opinion persuasive and consistent with the medical evidence and other evidence of record. The ALJ found no other psychological source opinion persuasive.

The Court agrees with *Dowden* and *Batson* that finding an opinion "persuasive" is sufficiently similar to the previous assignment of "great" or "significant" weight, such that the ALJ should include in the RFC the limitations contained in an opinion deemed persuasive or explain why that was not done.[4] This is especially true when the ALJ recites the limitation in the decision, such as the ALJ did here. The Court also agrees with *Dowden*

---

[4] The Court respectfully departs from *Jacob P. v. Saul*, No. 19-CV-3078-KMM, 2021 WL 352416, at *4 (D. Minn. Feb. 2, 2021), in this regard, because that case does not, as *Dowden* and *Batson* do, fully draw a parallel between the former "significant weight" language and the newer "persuasive language.

that the purpose of § 404.1520c could be undermined if an ALJ did not adopt the limitations contained in an opinion that the ALJ found persuasive, consistent, and well-supported. Accordingly, the Court concludes the ALJ should have either included the one-to-two step limitation in the RFC or explained the decision to omit it.[5]

The omission of the limitation is significant because the jobs the ALJ found at step five that Plaintiff could perform are categorized under the Dictionary of Occupational Titles ("DOT") as "Reasoning: Level 2," which requires a worker in relevant part to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT 361.684-014 (Laundry Worker I); DOT 599.687-030 (Washer); DOT 381.687-018 (Cleaner, Industrial). The one-to-two step task limitation, however, is Level 1 Reasoning. DOT app. C; *see Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 558 (8th Cir. 2018) (explaining that Level 1 Reasoning "requires a worker to apply commonsense understanding to carry out one- or two-step instructions") (cleaned up). Thus, if the one-to-two step task limitation had been included in the RFC, the jobs of laundry worker, cleaner, and washer would not have been available to Plaintiff.

On remand, the ALJ must either include the one-to-two step task limitation in the RFC or explain why she did not do so. The Commissioner's final decision is reversed to this extent.

---

[5] A third possibility is that the ALJ meant to incorporate the one-to-two step limitation into the RFC by referring to "simple routine tasks," but that is not possible to discern from the record.

**B.      Dr. Gredvig's Opinion and Relevant Medical Evidence**

Dr. Gredvig treated Plaintiff for PTSD, anxiety, intermittent explosive disorder, and depression. (R. 295.) When treatment began, Plaintiff reported symptoms of depression, PTSD, and anxiety. (R. 357.) A mental status examination showed orientation to time and place, normal eye contact, normal speech, cooperative attitude, normal mood, appropriate affect, logical thoughts, focused attention and concentration, and no suicidal ideation. (R. 357.) Plaintiff said he had recently completed a partial hospitalization program during which he learned coping skills. (R. 358.) A mental status examination later that month showed an oriented sensorium,[6] a normal but anxious mood, an appropriate and normal affect, and suicidal ideation but no plan or intent. (R. 351.) Plaintiff described a recent driving incident during which he felt anxious and had a racing heart, shortness of breath, and disorientation. (R. 351.)

In February 2018, Plaintiff told Dr. Gredvig he was anxious because he was denied DIB. (R. 295.) Although the thought of working and being around people caused him anxiety, he planned to contact his past employer to ask about work that would not require him to drive downtown. (R. 295.) A treatment note from early March 2018 showed "worsening depression and anxiety secondary to ongoing financial stressors." (R. 292.) Plaintiff reported "passive thoughts of death," trouble sleeping, and irritability. (R. 292.) A mental status examination revealed orientation to time and place, normal eye contact, normal speech, cooperative attitude, anxious and depressed mood, restricted affect, logical

---

[6] An oriented sensorium is one in which the subject is oriented to time and place.

and ruminative thoughts, no suicidal ideation, intact insight and judgment, intact memory, and focused attention and concentration. (R. 293.) One week later, Dr. Gredvig documented an oriented sensorium, normal mood, appropriate/normal affect, and no safety issues. (R. 288.) Plaintiff reported improved mood and decreased anxiety through coping skills, but he was frustrated by navigating the worker's compensation, disability, and human resources systems. (R. 388.) Dr. Gredvig described Plaintiff as slightly improved from his previous appointment. (R. 288.)

In May 2018, Plaintiff told Dr. Gredvig that he had attempted suicide and had been hospitalized. (R. 719.) He was overwhelmed by his financial situation, lacked motivation, and spent about 20 hours a day in bed. He had spent the previous weekend working hard at his cabin but had not been able to motivate himself since. He described symptoms of PTSD and major depression. His mood was anxious, and his affect was normal and appropriate.

A month later, Plaintiff reported feeling "less down and anxious." (R. 707.) He had occasional suicidal ideation but no plan or intent. Dr. Gredvig described his appearance as slightly less anxious. The following month, in July 2018, Dr. Gredvig described Plaintiff's mood as normal and affect and appropriate and normal. (R. 706.) Plaintiff told the doctor his mood had improved, and he had been staying busy going up north and helping a friend remodel a fish house. He did not feel suicidal and could see "the light at the end of the tunnel."

Plaintiff told Dr. Gredvig in October 2018 that his medication was working overall and his anxiety was lower. (R. 694.) He felt panicky while driving if he could not see inside

other vehicles. Dr. Gredvig described Plaintiff's mood as anxious, but "a bit less anxious." The following month, Plaintiff told Dr. Gredvig he had settled his worker's compensation claim and felt a "huge relief." (R. 693.) He no longer felt suicidal or afraid of losing his home. Rather, he felt energetic and motivated and had been doing odd jobs for family and friends. Dr. Gredvig described Plaintiff's mood and affect as normal, noting that he presented "as far less anxious."

In June 2019, Plaintiff's mood and affect were normal. (R. 1029.) He told Dr. Gredvig that his anxiety had decreased overall, but was triggered by honking cars and road construction. Dr. Gredvig reported normal mood and affect again in August 2019. (R. 1024.) Plaintiff said he was "emotionally stable overall," but "had periods of anxiety and irritability when he feels pressured to complete tasks or when friends irritate him by not following through." Dr. Gredvig's interpretation was that Plaintiff struggled with anxiety "at times."

At Plaintiff's request, Dr. Gredvig completed a two-page, check-the-box Mental Functional Questionnaire in August 2019. (R. 722–23.) She opined that Plaintiff was markedly limited in working in coordination with others, accepting instructions and responding appropriately to criticism from supervisors, dealing with normal work stress, traveling to unfamiliar places, and using public transportation. As the supporting narrative on the form, Dr. Gredvig wrote that Plaintiff "has never been able to deal well [with] taking direction or criticism from supervisors; he hasn't been able to drive in the dark, cities, construction zones or unfamiliar places since May 2017." In addition, "dealing with work stress [and] coworkers became difficult . . . after he began working in a position where he

13

was primarily alone." Dr. Gredvig opined that Plaintiff would miss more than four days a month due to his mental impairments.

Dr. Gredvig also completed a three-page narrative report in August 2019. (R. 724.) She described the criteria for PTSD and explained how Plaintiff's reported symptoms met the criteria. Dr. Gredvig opined that Plaintiff's reported symptoms "cause clinically significant distress or impairment in social and occupational functioning" and that the road rage incident in May 2017 caused Plaintiff's PTSD and "rendered him unable to perform his work duties." Dr. Gredvig wrote that Plaintiff appeared visibly anxious (with "rigid posture, shortness of breath, shaking legs and rapid speech") when he talked about his inability to work or driving in a metropolitan area. According to Dr. Gredvig, Plaintiff would continue to need medication for his symptoms of anxiety and depression, and he might not ever be able to drive in a metropolitan area without experiencing flashbacks and debilitating anxiety. The doctor relayed Plaintiff's belief that he could do his job, however, if it were not located in a metropolitan area.

The ALJ found Dr. Gredvig's August 2019 opinion unpersuasive. (R. 21.) The ALJ found the degree of limitation inconsistent with the medical evidence and other evidence of record, particularly Plaintiff's "mental health treatment, the mental status examination findings, and the . . . reported activities of daily living." (R. 21.) The ALJ also found the opinion unsupported by Dr. Gredvig's own progress notes, which reflected gradual improvement, and unsupported by narrative explanations or clinical findings. (R. 21.) The ALJ also found that Dr. Gredvig may have relied too heavily on Plaintiff's subjective reporting of symptoms. (R. 21.)

14

The Court finds that the ALJ's consideration of Dr. Gredvig's opinion was not legally erroneous and is supported by substantial evidence in the record as a whole. First, Dr. Gredvig's opinion that Plaintiff was markedly limited in working with others, accepting instructions and responding appropriately to criticism from supervisors, and dealing with normal work stress is not supported by Dr. Gredvig's own treatment notes. More recent records generally documented normal mood, appropriate and normal affect, and a cooperative attitude. Plaintiff reported that his anxiety had improved over time with medication, coping skills, and resolution of his worker's compensation case. The severity of Plaintiff's depression and anxiety waxed and waned to some extent with his financial situation, and an ALJ may consider when symptoms are exacerbated by situational stressors such as financial hardship. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010); *Dunahoo v. Apfel*, 241 F.3d 1033, 1039–40 (8th Cir. 2001). In addition, Plaintiff's more recent reported instances of anxiety and irritability were periodic and did not significantly limit his ability to function. Indeed, Plaintiff said he wanted to work as long as the job was not in a metropolitan area.

Second, Dr. Gredvig's opinion is also inconsistent with evidence from other providers. For example,[7] in May 2018, clinician Julie Johnson recorded on a progress note that Plaintiff described his mood as an eight out of ten, had no concerns about safety or symptoms, and recently had taken "his Harley motorcycle out for a spin." (R. 631.) Plaintiff was vocal, active, engaged, welcoming to new group therapy members, and "overall

---

[7] The records summarized in this paragraph are representative examples of evidence that is not consistent with Dr. Gredvig's opinion.

appropriate" during group therapy sessions. (*E.g.*, R. 633, 634, 636.) In October 2018, Plaintiff reported to Dr. Anita Thampy that his PTSD and depression symptoms had improved and his medications were working. (R. 700.) He was doing house projects, helping his friends to make extra income, and working on "multiple construction projects" with a friend. Dr. Thampy's mental status examination revealed full orientation, normal eye contact, normal speech, cooperative attitude, stable mood, appropriate affect, intact memory, focused attention, and logical and goal directed thoughts. In April 2019, Plaintiff told Dr. Thampy he was "doing a lot better" after some financial stressors had been resolved. (R. 686.) A mental status examination was normal and appropriate in all respects. (R. 688.)

Third, the ALJ correctly observed that the marked limitations suggested by Dr. Gredvig were not supported by clinical findings or the narrative statement on the form, which indicated only that Plaintiff could not "deal well [with] taking direction or criticism from supervisors" and was limited in his ability to drive. An opinion set forth on a check-the-box form with no explanation or clinical findings is an "unsupported conclusion on [a claimant's] inability to work." *Kraus v. Saul*, 988 F.3d 1019, 1025 (8th Cir. 2021). The three-page report Dr. Gredvig completed at the same time does not provide the missing support, as it consists almost entirely of Plaintiff's self-reported symptoms. Her opinion that Plaintiff could not work due to his PTSD was "neither valuable nor persuasive" because it was a statement on an issue reserved to the Commissioner for determination. 20 C.F.R. § 404.1520b(c)(3)(i).

Finally, as noted by the ALJ, the limitations in Dr. Gredvig's opinion are not consistent with Plaintiff's daily activities, which included "driving, doing odd jobs and construction projects for friends, painting his house, grocery shopping, preparing simple meals, housecleaning, caring for his personal hygiene, helping to care for family pets, spending time with his family and friends, . . . exercising, ice fishing, riding a motorcycle, traveling to his cabin," and woodworking. (R. 20.)

The Court has considered both the supporting and detracting evidence and finds that there is substantial evidence to support both the position of the Plaintiff and the position of the Commissioner. As noted above, if faced with two conclusions that are supported by substantial evidence, and one of them is the Commissioner's, the Court must uphold the Commissioner, unless the Commissioner committed legal error. The ALJ did not err in her consideration of Dr. Gredvig's opinion and the Court therefore must uphold the position of the Commissioner.

### C.  The ALJ's Duty to Fully and Fairly Develop the Record

Plaintiff next argues that the ALJ did not fully and fairly develop the record because she rejected all of the medical opinions about his physical limitations and did not obtain additional medical opinions. But that is not what the law or any regulation requires. RFC is a medical question, and some medical evidence must support it. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001). The law does not require, however, that some *opinion* must support it. The Eighth Circuit Court of Appeals squarely rejected Plaintiff's argument in *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("However, there is no requirement that an RFC finding be supported by a specific medical opinion."). Medical records

prepared by a claimant's doctor are sufficient to support an ALJ's RFC assessment. *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011); *see also KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372–73 (8th Cir. 2016) (finding the RFC was adequately supported where, in arriving at the RFC, the ALJ properly considered the medical evidence, the plaintiff's reported functioning and activities, and the plaintiff's testimony in arriving at the RFC).

Relatedly, Plaintiff contends that *if* the ALJ did not believe the medical opinions were sufficient to allow her to determine Plaintiff's RFC, then the ALJ should have further developed the record. But there is no indication that the ALJ believed the opinion evidence was insufficient. Finding an opinion unpersuasive is not tantamount to finding the record undeveloped. Therefore, the ALJ was not obligated to further develop the record by obtaining additional opinion evidence.

The ALJ found that Plaintiff had the RFC to do "a full range of work at all exertional levels," with some nonexertional limitations included primarily to account for Plaintiff's mental impairments and symptoms. Medical records and other evidence support the physical component of the RFC. Treatment records generally reflect normal physical examinations, and Plaintiff received minimal treatment for his physical symptoms during the relevant time. (*E.g.*, R. 748, 758, 794, 800, 802, 820, 852.) Imaging was unremarkable, showing only mild musculoskeletal pathology. (*E.g.*, R. 788, 795, 803, 810, 813.) The ALJ summarized many of these medical records elsewhere in the decision. (R. 13–14.) The ALJ also observed the "minimal history of treatment for physical complaints during the period" and "objective imaging evidence of only mild musculoskeletal pathology." (R. 22.) Notably, the ALJ's determination that Plaintiff's physical impairments caused no work-

related limitations is consistent with the ALJ's finding that none of Plaintiff's physical impairments were severe.

The ALJ also found that Plaintiff's activities (*i.e.*, driving, doing odd jobs and construction projects, painting his house, shopping, preparing simple meals, cleaning, caring for family pets, exercising, ice fishing, riding a motorcycle, traveling to his cabin, and woodworking) were not consistent with the intensity, persistence, and limiting effects of the physical symptoms claimed by Plaintiff. (R. 20, 22.) An ALJ may properly consider a claimant's daily activities when assessing their RFC. *See Schmitt v. Kijakazi*, --- F.4th ----, No. 20-3341, 2022 WL 696974, at *5 (8th Cir. Mar. 9, 2022). And, as determined below, the ALJ did not err in her consideration of Plaintiff's daily activities.

### D.   The ALJ's Consideration of the Intensity, Persistence, and Limiting Effects of Plaintiff's Symptoms

Plaintiff challenges the ALJ's assessment of his "credibility." (Pl.'s Mem. at 28.) The Social Security Administration discontinued use of that term in 2016. Soc. Sec. Ruling ("SSR") 16-3p (S.S.A. Mar. 28, 2016). Now, an ALJ evaluates the intensity, persistence, and limiting effects of a claimant's symptoms. *Id.*; *see* 20 C.F.R. § 404.1529. The ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p. In addition to using the evidence of record, the ALJ will consider the following factors: (1) daily activities; (2) "location, duration, frequency, and intensity of . . . symptoms"; (3) triggering and

aggravating factors; (4) "type, dosage, effectiveness, and side effects of any medication"; (5) other treatments for relief of symptoms; (6) other measures used to relieve symptoms; and (7) any other relevant factors. 20 C.F.R. § 404.1529(c)(3).

Plaintiff challenges the ALJ's consideration of the objective medical evidence, particularly the ALJ's findings that Plaintiff's symptoms had improved with treatment and that mental status examinations were inconsistent with the claimed severity of Plaintiff's symptoms. The Court has already determined that substantial evidence supports the ALJ's findings that Plaintiff's symptoms had improved with treatment and that mental status examination findings were inconsistent with disabling mental health symptoms. *See* Part III.B *supra*. The ALJ did not err in finding that the claimed intensity, persistence, and limiting effects of Plaintiff's symptoms were inconsistent with treatment records and examination findings.

Plaintiff also challenges the ALJ's consideration of his daily activities. It is well established, however, that an ALJ can consider activities such as driving, doing odd jobs and construction, painting, shopping, cooking, cleaning, exercising, fishing, riding a motorcycle, traveling, and woodworking as inconsistent with subjective statements of disabling symptoms. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009). The ALJ did not commit a legal error in her consideration of Plaintiff's daily activities, and substantial evidence in the record supports the ALJ's finding that his activities were not consistent with his claimed symptoms.

Accordingly, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion for Summary Judgment (Dkt. No. 22) is **GRANTED IN PART** and **DENIED IN PART**.

2.    Defendant's Motion for Summary Judgment (Dkt. No. 31) is **GRANTED IN PART** and **DENIED IN PART**.

3.    The decision of the Commissioner of Social Security is **REVERSED**, and this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order, specifically: The ALJ must either include Dr. Gilyot-Montgomery and Dr. Ludeke's one-to-two step task limitation in the RFC or explain why it was not included.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: March 21, 2022                         *s/ John F. Docherty*
                                             JOHN F. DOCHERTY
                                             United States Magistrate Judge